HALL, Judge.
This matter arises out of a collision between two automotive vehicles which occurred at the intersection of S. Salcedo and Jena Streets in the City of New Orleans on April 8, 1959. The collision involved a 1954 two-door Buick owned by Robert Oels-ner, operated at the time by his wife, Irene, and a Chevrolet panel truck owned by Central Truck Lines Inc. and operated by its employee, Charles Durham. Two suits were filed as ,a result of the accident — one by Mr. and Mrs. Oelsner against Central Truck Lines Inc., as employer of Charles Durham, and its liability insurer for property damages and for the personal injuries sustained by Mrs. Oelsner in the accident, and the other by Charles Durham against Mr. and Mrs. Oelsner and their liability insurer for damages for the personal injuries sustained by him. Fidelity and Casualty Company of New York intervened in the latter suit as the Workmen’s Compensation carrier of Central Truck Lines Inc. seeking to recover the sum of $876.15 representing, compensation and medical expenses it was obligated to pay Charles Durham for disability and treatment due to his injuries. The two suits were consolidated for trial on the merits and following the trial a single judgment was rendered:
(a) Dismissing the suit of Robert and Irene Oelsner against Central Truck Lines Inc. and its liability insurer, and
(b) In Durham’s suit against Mr. and Mrs. Oelsner et al. judgment was rendered in favor of the plaintiff, Durham, and against Mr. and Mrs. Oelsner and their liability insurer in solido in the sum of $2,500.-00, recognizing the claim of Fidelity & Casualty Company of New York for compensation and medical expense paid by it in the sum of $876.15 and ordering it to be paid by preference and priority out of the sum awarded plaintiff.
No appeal has been taken from that part of the judgment which dismissed Mr. and Mrs. Oelsner’s suit against Central Truck Lines Inc. et al. and that case is not before us. Mr. and Mrs. Oelsner and their liability insurer prosecute this appeal from that part of the judgment which awarded damages against them in favor of Durham. Durham neither appealed nor answered the appeal.
*429 The sole question presented by this appeal is whether the plaintiff, Durham, was guilty of contributory negligence in the operation of the panel truck. Appellants concede negligence on the part of the defendant, Mrs. Oelsner, and make no complaint with reference to the quantum of damages awarded.
The record reveals that the accident occurred at about noon on April 8, 1959. The weather was clear and the streets dry. Mrs.' Oelsner was operating the family Buick on Jena Street proceeding in the direction of Lake Pontchatrain, while Durham was driving the panel truck in an uptown direction on S. Salcedo Street. Durham was therefore approaching from Mrs. Oelsner’s right. Both streets are asphalt paved and intersect each other at right angles. Jena Street is 26 feet wide, S. Salcedo is 24 feet wide. The speed limit on each street is 20 miles per hour. The streets are of equal dignity and traffic at their intersection is entirely uncontrolled by lights, signs or otherwise.
The two' vehicles came into collision at approximately the center of the intersection. The damage to the two vehicles as shown by the photographs in evidence indicates that the left front bumper and fender of the panel truck driven by the plaintiff, Durham, struck the Buick driven by Mrs. Oelsner on the right front just forward of the windshield.
The only eye witnesses to the accident were Mrs. Oelsner, her mother-in-law who was a passenger in her car, and Durham.
Mrs. Oelsner testified that she had been travelling on Jena Street at 15 to 20 miles per hour and that when she came to the intersection of S. Salcedo Street she came to a “creeping stop”, slowing to a speed of 3 to 5 miles per hour. She further testified that when the front wheels of her vehicle were approximately even with the curb line of S. Salcedo Street she looked to her right and then to her left and, seeing no vehicles approaching from either direction, she proceeded into the intersection at 5 to 10 miles per hour; that the front seat of her car had passed over the center of the intersection when she first saw the truck which was then “right on top of me” — about 5 or 6 feet away. Mrs. Oelsner testified that the impact of the collision threw her off the seat and that her foot or knee struck the accelerator causing the Buick to proceed out of control across the intersection and out Jena Street.
Mrs. Oelsner’s mother-in-law testified that they were proceeding slowly and that although she looked to the right she saw no vehicle approaching.
Durham testified that he was proceeding uptown on S. Salcedo Street at 15 to 20 miles per hour; that as he neared the intersection he looked but could see nothing; that when his front wheels were about even with the sidewalk he looked again and saw that the Buick was going to hit him; that the Buick was then not over 20 feet away; that he applied his brakes and swung his vehicle to the right and that the vehicles collided at an angle; that his truck was trav-elling only 5, 6 or 7 miles per hour at the moment of impact.
Patrolman Schwall of the New Orleans Police Department who investigated the accident testified that he arrived at the scene about 15 minutes after the collision and that upon questioning Mrs. Oelsner she told him that she was going 25 miles per hour in the intersection. Mrs. Oelsner denied that the officer spoke to her at all, although she admitted that she saw a policeman on the scene investigating.
The speed of the two vehicles and the degree of visibility at the corner are the vital points in the case.
The record reveals that there is a residence on the downtown river corner of the intersection. The residence faces S. Sal-cedo Street and between the front of the residence and the sidewalk there is a tall, thick hedge.
Durham testified that because of this hedge a person travelling uptown on S. Sal- *430 cedo cannot see out Jena Street to his left until he gets almost to the sidewalk. He testified that when he first looked to his left he couldn’t see on account of the hedge and that he was not able to see Mrs. Oelsner until he was right at the corner — even with the sidewalk. At that point he testified that he could see all the way down the block.
Mrs. Oelsner testified that a person driving toward the Lake on Jena Street can see 125 feet to the right down S. Salcedo Street when the front wheels of his vehicle are at the curb line of that street; that the hedge obscures the view beyond that point. She testified that she and her husband measured the distance some days after the accident. It is significant in our opinion, however, that no where in her testimony does she undertake to say that a person can see down Jena Street at all before arriving flush with the corner.
The trial judge held that Mrs. Oelsner’s negligence was the proximate cause of the accident, thereby absolving Durham from any contributory negligence. We find no manifest error in this ruling. The trial judge was entitled to believe and apparently did believe that Durham who had the directional right of way accorded both by ordinance No. 1434 M.C.S. of the City of New Orleans and by state law (LSA-R.S. 32:237) was not at fault in not seeing Mrs. Oelsner’s car before he did. Furthermore, there is no evidence whatever to show that he was going faster than 15 to 20 miles per hour. On the other hand the testimony of Patrolman Schwall, a disinterested witness, indicates that Mrs. Oelsner was going about 25 miles per hour in the intersection. If she was going at that speed, which the trial judge was entitled to believe, the accident could well have happened without any fault attributable to Durham.
Appellants contend that this case is precisely like the Borchers case (Smith v. Borchers, 243 La. 746, 146 So.2d 793, affirming La.App., 138 So.2d 231) wherein the plaintiff was found guilty of contributory negligence. We cannot agree that any two mtersectional accidents are ever precisely alike, and in the instant case the distinguishing' features are the speed of the Oelsner vehicle and the fact that the corner is practically “blind”.
For the foregoing reasons the judgment appealed from is affirmed, appellants to pay costs of this appeal.
Affirmed.